UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| TYLER CONTI,<br>       Plaintiff,<br>    v.<br><br>ANDREW M. SAUL,[1] Commissioner of<br> Social Security,<br>       Defendant. | **DECISION**<br>**and**<br>**ORDER**<br><br>**19-CV-00866F**<br>(**consent**) |

_____

APPEARANCES:    LAW OFFICES OF KENNETH R. HILLER, PLLC
             Attorneys for Plaintiff
             KENNETH R. HILLER, and
             JEANNE ELIZABETH MURRAY, of Counsel
             6000 North Bailey Avenue
             Suite 1A
             Amherst, New York 14226

             JAMES P. KENNEDY, JR.
             UNITED STATES ATTORNEY, and
             RICHARD W. PRUETT
             Special Assistant United States Attorney
             Attorney for Defendant
             Federal Centre
             138 Delaware Avenue
             Buffalo, New York 14202, and

             MONA AHMED
             Acting Regional Chief Counsel
             Denver, Region VIII
             Office of the General Counsel
             Social Security Administration
             1961 Stout Street, Suite 4169
             Denver, Colorado 80294-4003

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 14, 2020, this matter was assigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 14).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on February 11, 2020 (Dkt. No. 13), and by Defendant on May 12, 2020 (Dkt. No. 17).

## BACKGROUND

Plaintiff Tyler Conti ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on August 13, 2015, for Supplemental Social Security Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges he became disabled on June 30, 1993, based on phenylketonuria ("PKU"),[2] migraine headaches and knee pain.  (R. 239).[3]  Plaintiff's application initially was denied on October 30, 2015, (R. 81-93), and at Plaintiff's timely request, on March 14, 2018, a hearing was held in Buffalo, New York via teleconference before Administrative Law Judge Theodore Kim ("the ALJ"), in Falls Church, Virginia.  (R. 59-80) ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff, represented by Jo Evelyn Smith, Esq. ("Smith"), and vocational expert Barry Brown ("the VE").

---

[2] Phenylketonuria is a genetic enzyme disorder that can result in mental retardation, organ damage and unusual posture.
[3] References to "R" are to the page of the administrative record electronically filed by Defendant on September 25, 2019 (Dkt. No. 6).

On July 10, 2018, the ALJ issued a decision denying Plaintiff's claim (R. 33-57) ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  On December 14, 2018 and February 27, 2019, Plaintiff submitted 11 pages of additional medical records (R. 8-14, 20-26), which the Appeals Council did not "exhibit" with Plaintiff's medical records because such records were not timely submitted, did not show a reasonable probability of changing the outcome of the decision, or did not relate to the relevant period.  On April 29, 2019, the Appeals Council denied Plaintiff's request for review (R. 1-7), rendering the ALJ's Decision the Commissioner's final decision.  On June 28, 2019, Plaintiff commenced the instant action seeking review of the ALJ's Decision.  (Dkt. No. 1).

On February 11, 2020, Plaintiff moved for judgment on the pleadings (Dkt. No. 13) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Administrative Record (Dkt. No. 13-1) ("Plaintiff's Memorandum").  On May 12, 2020, Defendant moved for judgment on the pleadings (Dkt. No. 17) ("Defendant's Motion"), attaching Commissioner's Brief in Response Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. No. 17-1) ("Defendant's Memorandum").  Filed on June 2, 2020, were Plaintiff's Reply Arguments (Dkt. No. 18) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[4]

Plaintiff Tyler Conti ("Plaintiff" or "Conti"), born June 16, 1993, was one year old as of June 30, 1993, Plaintiff's alleged disability onset date ("DOD"). As of the March 14, 2018 administrative hearing, Plaintiff was married and lived with his grandfather, and had a 18 month-old child. Plaintiff completed eighth grade in school, has not completed any type of specialized job training, trade, or vocational school, and describes his daily activities as watching television, reading, and attending doctor's appointments. (R. 36).

Plaintiff has no past relevant work but worked for two weeks operating a ride at an amusement park. (R. 70). Plaintiff alleges that he is unable to work because Plaintiff's PKU causes memory issues and an unawareness of his surroundings. (R. 65). In connection with Plaintiff's alleged impairments, on July 9, 2015, Plaintiff sought treatment from John Sauret, M.D. ("Dr. Sauret"), for bilateral knee pain, where upon examination, Dr. Sauret noted that Plaintiff exhibited a normal gait, and an X-ray revealed cystic lesions on Plaintiff's tibia. (R. 481-83, 522). On September 11, 2015, Dr. Sauret completed a follow-up examination on Plaintiff, evaluated Plaintiff with a normal gait and noted that Plaintiff denied any additional physical problems. (R. 755).

On October 21, 2015, in connection with his disability benefits application, Plaintiff underwent a consultative psychiatric evaluation by psychologist Susan Santarpia, Ph.D., ("Dr. Santarpia"), who noted that Plaintiff reported living with his mother and a recent diagnosis of depression and attention deficit hyperactivity disorder

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

("ADHD"), difficulty sleeping, and social withdrawal. (R. 527). Dr. Santarpia evaluated Plaintiff with the ability to follow and understand simple directions, perform simple tasks independently, maintain concentration and attention, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. (R. 527-30).

On October 21, 2015, Samuel Balderman, M.D. ("Dr. Balderman"), completed a consultative internal medical examination on Plaintiff who reported migraine headaches and knee pain. Upon examination, Dr. Balderman evaluated Plaintiff with a normal gait, and normal musculoskeletal and neurologic examinations. (R. 533-34).

On October 27, 2015, Christopher Pino, Ph.D., ("Dr. Pino"), completed a psychological examination on Plaintiff, noted that Plaintiff's medical problems caused depression, mixed learning abilities, and insomnia, and that Plaintiff scored within the range for ADHD on the Copeland Adult ADD checklist. (R. 538).

Dr. Sauret evaluated Plaintiff with normal physical examination results on November 16, 2015 (R. 750), February 1, 2016 (R. 748), June 1, 2016 (R. 746), September 8, 2016 (R. 744), and October 17, 2016 (R. 742).

On February 6, 2016, Nurse Practitioner Kathleen Cloutire ("N.P. Cloutire"), completed a rheumatological examination on Plaintiff, noted that Plaintiff reported daily exercise that included riding a bicycle and rollerblading, evaluated Plaintiff with a normal rheumatological examination, advised Plaintiff to continue engaging in an active lifestyle and encouraged Plaintiff to remain productive to avoid a disability status. (R. 678).

On October 17, 2016, Dr. Sauret completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction form on

behalf of the New York State Office of Temporary and Disability Assistance including a check-box form related to Plaintiff's functional limitations wherein Dr. Sauret indicated that Plaintiff was very limited in standing, lifting, pushing, pulling, bending, climbing stairs, and limited in nearly all areas of mental functioning.  (R. 704).

On November 22, 2016 (R. 740), and December 6, 2016 (R. 738), Dr. Sauret completed a physical examination on Plaintiff with normal results.

On January 11, 2018, Plaintiff sought treatment from Baljinder Singh, M.D. ("Dr. Singh"), for right-sided numbness with neck pain.  Upon examination, Dr. Singh evaluated Plaintiff with a normal neurological examination.  (R. 764-65).

On February 25, 2018, Dr. Pino completed psychiatric functional assessment questionnaire on Plaintiff and evaluated Plaintiff with marked limitations to understanding and learning terms, instructions and procedures, sequencing multi-step activities, concentration, persistence and pace, adapting and managing himself, and opined Plaintiff would be absent from work more than four days monthly because of his impairments and treatment.  (R. 688-89).

On February 27, 2019, Plaintiff submitted supplemental evidence to the Appeals Council that included a physical residual functional capacity questionnaire completed by Dr. Sauret on December 14, 2018, wherein Dr. Sauret opined that Plaintiff had limitations to standing and walking less than two hours in an eight-hour workday, occasionally lifting less than 10 pounds, no climbing ladders, and required 10 minute breaks from work on an hourly basis.  (R. 10-13).  Plaintiff further supplemented the record with a mental health questionnaire completed by Dr. Pino on September 11, 2018, wherein Dr. Pino opined that Plaintiff was unable to meet competitive standards

at work, and had no ability to deal with normal work stress and maintain attention for a two hour time period.  (R. 11-14).

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

8

Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, or if the defendant fails to meet its burden at the fifth step, the inquiry ceases with the claimant eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

    In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity ("SGA") since Plaintiff's alleged disability onset date, and suffers from the severe impairments of PKU, major depressive disorder, adjustment disorder, bipolar disorder, social anxiety disorder, migraine with aura, polyarthralgia, fibromyalgia, asthma, right

knee meniscus tear, and bilateral chondromalacia (cartilage damage) of the patella (R. 38), and medically determinable impairments of panic disorder, bowel disorders, epilepsy, syncope, orthostasis, allergic rhinitis, chronic rhinitis, fatigue, heart disease, learning disability, blood pressure problems, costochondritis (cartilage inflammation of ribs and breastbone), obstructive sleep apnea, tremor, gallbladder polyps, lumbar strain, cervicalgia, heartburn, bronchitis, sinusitis, Vitamin D deficiency, ADHD, and anxiety, which do not cause more than a minimal limitation of Plaintiff's ability to perform basic work activities and are therefore non-severe,[6] and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 39.  Despite his impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), with limitations to frequently operating hand, controls, handling, fingering, feeling and reaching with upper extremities, pushing, pulling or operating foot controls with both lower extremities, occasional kneeling, crouching, stooping, balancing or crawling, exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, poor ventilation, extreme cold and heat, wetness, humidity, vibration, dealing with supervisors, co-workers and the general public, changes in a routine work setting, no work that includes exposure to strobe lights, flashing or bright lights, and the ability to be off-task five percent of each workday.  (R. 41).  The ALJ further determined that Plaintiff has no past relevant work and elicited testimony from VE Brown that Plaintiff, based on Plaintiff's age, education, and RFC, in accordance with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the

---

[6] "An impairment is not severe if it does not significantly limit [a claimant's] physical or mental abilities to do basic work activities."  20 C.F.R. § 404.1521(a) (bracketed text added).

Grids"), could perform other work existing in significant numbers in the national economy including as a merchandise marker, routing clerk, and photocopy machine operator. (R. 74--79). Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 52.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that the Appeals Council erred by not providing a more detailed explanation for rejecting Dr. Pino's supplemental questionnaire, and in not accepting the supplemental records from Dr. Sauret, as the findings therein related to Plaintiff's alleged impairments and resulting limitations. Plaintiff's Memorandum at 23-24. Plaintiff further argues that the ALJ cherry-picked portions of evidence from Drs. Pino and Sauret, resulting in the ALJ substituting his lay opinion for the opinions of medical experts. Plaintiff's Memorandum at 25-35. Defendant maintains that the Appeals Council properly found Dr. Pino's questionnaire did not alter the ALJ's finding that Plaintiff was able to perform light work, and properly found Dr. Sauret's supplemental questionnaire dated December 14, 2018, unrelated to Plaintiff's disability period ending on July 10, 2018, because such questionnaire was issued five months after the ALJ's decision. Defendant's Memorandum at 19-22. In reply, Plaintiff characterizes Defendant's argument regarding the newly submitted evidence as "post-hoc rationalization," Plaintiff's Reply at 2-3, and that the ALJ's RFC finding was unsupported by substantial evidence. *Id.* 3-6. Plaintiff's arguments are without merit.

With regard to the Appeals Council's decision to not "exhibit" Plaintiff's supplemental records, such records pertain to seven pages each of a supplemental mental residual functional capacity questionnaire completed by Dr. Pino on September

11

11, 2018 (R. 10-14), and a supplemental physical residual functional capacity questionnaire completed by Dr. Sauret on December 14, 2018.  (R. 22-26).

With regard to Plaintiff's supplemental records from Dr. Sauret, the regulations provide that disability benefits claimants "must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence ... no later than 5 business days before the start of the scheduled hearing," 20 C.F.R. § 404.935(a) ("§ 404.935(a)"), and the failure to comply with this requirement may result in the ALJ declining to consider such evidence unless one of several exceptions is met unless a claimant establishes that (1) the evidence is new and material and relates to the period on or before the date of the hearing decision; (2) there is a reasonable probability that the evidence would change the outcome of the ALJ's decision, and (3) there is good cause for not submitting the evidence at an earlier time. 20 C.F.R. § 416.1570(a)(b) ("§ 416.1570(a)(b)").  If any of the requirements under § 416.1570(a)(b) are not met, the Appeals Council may deny review of the supplemental evidence making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 416.1570, 416.1581, 422.210(a).

In this case, the Appeal's Council determined that Dr. Sauret's supplemental questionnaire on December 14, 2018, was unrelated to Plaintiff's claim for benefits on or before July 10, 2018, and advised Plaintiff to file a new claim for benefits within 60 days of the Appeals Council's decision should Plaintiff want the supplemental evidence reviewed (R. 2).  The Appeals Council's determination is thus in accordance with the

12

standards for not accepting supplemental evidence provided under 20 C.F.R. § 416.1535(b)(1).  Plaintiff's motion on this issue is therefore without merit and DENIED.

Plaintiff's argument that the Appeals Council erred by not exhibiting Plaintiff's supplemental evidence from Dr. Pino is also without merit.  Upon reviewing the findings in Dr. Pino's September 11, 2018 mental residual functional capacity questionnaire, the Appeals Council determined that the supplemental evidence would not alter the outcome of the ALJ's decision that Plaintiff was able to perform limited light work (R. 1-2), a finding in accordance with § 416.1570(a)(b), as Dr. Pino's September 11, 2018, questionnaire was duplicative of other evidence in the record from Dr. Pino (R. 538), previously rejected by the ALJ.  *See Suttles v. Colvin*, 654 Fed. App'x. 44, 47 (2d Cir. 2016) (no remand where Appeals Council rejects supplemental evidence that does not materially alter the ALJ's decision).  Plaintiff's motion on this issue is therefore DENIED.

Plaintiff's argument that the ALJ improperly afforded partial weight to Dr. Sauret's opinion that Plaintiff was limited in standing, lifting, pushing, pulling, bending, climbing stairs, and nearly all areas of mental functioning (R. 704-14), is also without merit. Upon completing an in-depth review of Plaintiff's medical records (R. 39-45), the ALJ determined that Dr. Sauret's findings on Plaintiff's limitations (R. 713-14), were set forth on a check-box-questionnaire that lacked medical explanation and inconsistent with the majority of Dr. Sauret's physical examination findings.  (R. 48).  The ALJ's determination on this issue is supported by substantial evidence as Dr. Sauret evaluated Plaintiff with normal physical examination findings on July 9, 2015 (R. 481-83), September 11, 2015 (R. 755), November 16, 2015 (R. 750), November 22, 2016 (R. 740), and December 6, 2016 (R. 738), findings inconsistent with the limitations included on Dr. Sauret's check-

13

box-questionnaire.  Plaintiff's motion on this issue is therefore DENIED.  *See Monroe v. Colvin*, 676 Fed. App'x. 5, 7-8 (2d Cir. 2017) (no remand where ALJ discounted opinion physician opinion inconsistent with physician's treatment notes); *Suttles v. Colvin,* 654 Fed. App'x. 44, 47 (2d Cir. 2016) (no remand where Appeals Council rejects untimely evidence that does not materially alter ALJ's decision).

Plaintiff's further allegation that the ALJ erred by affording little weight to Dr. Pino's October 27, 2015, finding that Plaintiff's medical problems caused depression, mixed learning abilities, and insomnia (R. 538), and misapplying the factors set forth under *Burgess v. Astrue* ("*Burgess*")*,* 537 F.3d 117, 128 (2d Cir. 2008), Plaintiff's Memorandum at 26-30, is also without merit.  It is the Plaintiff's burden to prove that he or she has physical or mental limitations that restrict his or her capacity to perform basic work activities to less than the full range of work.  *Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018) (citing 20 C.F.R. § 423(d)(5) (finding ALJ did not arbitrarily substitute his own judgment for competent medical advice where the plaintiff failed to prove he was capable of a more restrictive RFC).  As indicated in the foregoing, *see* Discussion, *supra*, at 12-13, the ALJ properly evaluated the medical evidence and opinions in the record and Plaintiff's testimony regarding his activities of daily living in assessing Plaintiff's RFC as permitting Plaintiff  to perform a limited range of light work.  Moreover, under the deferential standard of review applicable to a district court's review of an ALJ's determination of a social security disability claim, substantial evidence in the record may support two contrary rulings.  *See McIntyre v. Colvin*, 758 F.3d 146, 148 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982)).  The ALJ's RFC determination, supported by substantial evidence in the record, renders Plaintiff's argument to the contrary without merit. Plaintiff's motion on this issue is therefore DENIED.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. No. 13) is DENIED; Defendant's Motion (Dkt. No. 17) is GRANTED.  The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   October 28, 2020
         Buffalo, New York